**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JUTSNA AHMED, | |
| Plaintiff, | Civil Action No. 07-0588 (PGS) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | OPINION |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

This action is a timely appeal from a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. 405(g) and 1383(c)(3). Plaintiff, Jutsna Ahmed ("plaintiff" or "Ahmed") seeks a review of the final decision of the Social Security Administration (Agency) denying her application for Social Security Disability Income Benefits. Plaintiff alleges disability since October 16, 2003 due to severe back pain, knee pain and residuals of breast cancer. The plaintiff meets the nondisability requirements set forth in Section 215(I) of the Social Security Act and is insured for disability benefits through December 31, 2008.

The only issue to be determined is whether there is substantial evidence which supports the Agency's decision that plaintiff was not disabled from October 16, 2003, her alleged disability onset date, through May 17, 2006, the date of the Administrative Law Judge's ("ALJ") decision.

1

I.

Plaintiff is a 45 year old woman who was born in Bangladesh. Since 1984 she has resided with her husband in Haledon, New Jersey. She graduated from high school in Bangladesh, and reads and writes English. Plaintiff's previous work history includes packing small batteries into boxes, working as a counter person at Dunkin Donuts, and selling clothing in a retail store. She is currently supported by her husband's income.

At the hearing of April 4, 2006 before Administrative Law Judge Edgell, Ahmed testified about her back and knee pain as well as her cancer. With regard to back pain, Ahmed took Vioxx and tylenol with codeine for pain. She takes the pain medication twice a day, and it makes her feel drowsy. Her doctor recommended epidural injections for her back pain and to undergo surgery. To date, she has declined the injections, and she does not want a surgery because her doctor says it is not successful, "like 80 percent of the time". (R. 319). She testified that her left arm is weak as a result of treatment for breast cancer in 2002. In addition to the back problem, plaintiff testified that Dr. Mattarese, her orthopedist, suggested knee surgery, but she declined such treatment. The pain in her back radiates down into her legs, and her feet swell.

In February, 2002 plaintiff was diagnosed with carcinoma of the left breast. (R. 141). The pathologic diagnosis was "tubular carcinoma, well differentiated, two small adjacent foci, together measuring .8 cm on the glass slide" on the left breast upper quadrant (R. 143, 156, 228). In March, 2002, plaintiff had a left partial mastectomy and left lymph node biopsy. (R. 148, 200). She underwent chemotherapy, radiation therapy and was placed on tamoxifen[1] (R. 201, 203). She was

---

[1] **Tamoxifen** is an orally active selective estrogen receptor modulator (SERM) which is used in the treatment of breast cancer.

given a good prognosis by her oncologist Harish H. Shah, M.D. in July and September, 2003. In fact, in September 2005, Dr. Shah observed that plaintiff appeared in no acute distress (R. 296). Her left and right breast were normal without any evidence of a mass or discharge. On March 16, 2006, plaintiff informed Dr. V. Roy (Dr. Shah's Associate) that she was feeling well and had no new complaints (R. 294). Dr. Roy reported that plaintiff's breast cancer was in remission (R. 295).

On a typical day, plaintiff rises at 6:00 a.m. and washes and dresses herself. Thereafter, she watches television, sleeps or lays down. She does some housework twice a week with her husband's assistance, and her sister also cleans and cooks. Socially, she visits her sister-in-law regularly, but otherwise stays home. She prays the Koran five times a day sitting in a chair because it hurts her knees to kneel. She exercises or walks two or three blocks regularly. She can pick up about a half of gallon of water with her right arm, but not with her left. She can do work with her fingers, but claims she can not sit for more than 15 minutes at a time due to back pain; nor can set stand for long periods.

Plaintiff has endured back and knee pain since 2004. At that time, progress notes from St. Joseph's Hospital in Wayne, New Jersey indicate that plaintiff's chief complaint was soreness, and that she had improved 85% between May and August, 2004. (R. 162). An MRI from January of that year confirmed there were very small central disc herniations at L1-L2 and L-2 L3, and mild broad base disc bulging at L5-S1.  ( R. 185, 286).

William A. Materese, an orthopedist who treated plaintiff from May through September, 2005, found lumbar disc herniation and previously diagnosed joint derangement of the knees. Dr. Materese prescribed tylenol with codeine for pain. He also prescribed physical therapy, and noted that her treatment options included "leave it alone and live with it, medicine, therapy, MRI,

injections and finally, if there is pathology, medical intervention". It was further noted that if her lower back pain didn't improve, epidurals should be prescribed. Dr. Materese's September, 2005 treatment notes indicate that plaintiff "has pain some days" and that her knee pain was "feeling a little better". Examination of her gait and station were normal and she was found to be able to undergo exercise testing and/or participate in an exercise program. There was mild tenderness and weakness of the cervical spine. Right shoulder and rotator cuff and muscle strength was normal. On extension there was low back pain present, and mild weakness.

On February 15, 2005, plaintiff was seen by William Lathan, M.D. for a Internal Medicine Examination. (R. 250). He found that plaintiff could perform all activities of personal care and daily living. Vital signs were normal, and plaintiff appeared to be in no acute distress. Gait was normal and she could walk on heels and toes without difficulty. She used no assistive devices and needed no help getting on or off the examining table. She could rise from a chair without difficulty. Examination of her musculoskeletal system revealed full flexion, extension, lateral flexion of the cervical spine and full rotary movements bilaterally. At 45 degrees flexion plaintiff complained of mid-lumbar back pain; but extension, lateral flexion and rotary movements were full bilaterally. Straight leg raise was negative bilaterally. There was full range of motion in shoulders, elbows, hips, knees. Strength was 5/5 in upper and lower extremities. Joints were stable and non-tender with no redness, heat, swelling or effusion. There was no muscle atrophy noted in her extremities. Fine motor activity of the hands were intact and grip strength was 5/5 bilaterally. Prognosis was guarded, and he stated "there is a moderate restriction for activities requiring bending, lifting, carrying, pushing and pulling." (R. 250).

The February 15, 2005 radiology report of Pesho S. Kotval, M.D of plaintiff's lumbral sacral spine x-ray identified no bony or disc space pathology. (R. 273-96).

Dr. Tsai performed a consultative physical examination on August, 19, 2004 on behalf of the Agency (R. 230-232). Her complaints at that time were low back pain and pain going down into her right leg. Dr. Tsai's examination revealed slight tenderness of the lower back with mild paravetebral muscle spasm. Plaintiff was able to perform a straight leg raise 80 degrees bilaterally, and there was no sensory disturbance or muscle weakness. Dr. Tsai advised plaintiff to have an MRI. That MRI showed mild herniation of L1-2 and L2-L3. Plaintiff returned to see Dr. Tsai every two weeks during January and February, 2004 and she was advised to do exercises at home. The doctor noted that in April, 2004 she started physical therapy and continued with therapy and anti-inflammatory medications through June with good results, although occasional pain continued to recur. (Dr. Tsai report, p. 2, at R. 231). Dr. Tsai's diagnosis was chronic low back pain with a "guarded" prognosis.

A physical Residual Functional Capacity Assessment report was completed for plaintiff on October 1, 2004 by D. Schneider, M.D., a state agency physician. (R. 241- 248). Plaintiff's limitations were as follows: Occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks for a total of about six hours in a 8 hour workday; sit (with normal breaks) for a total of about six hours in a 8 hour workday; push and/or pull (including operation of hand and/or foot controls) unlimited. As to her severe back pain, it was noted that an MRI showed mild disc disease at L1-2 and L2-3 without spinal or foaminal stenosis. The assessment also refers to Dr. Tsai's report and findings of tenderness over the lower back, but minimal musculoskeletal abnormalities. (R. at 243). Plaintiff can frequently climb ramps or stairs,

but she can only occasionally stoop. There were no manipulative, visual, communicative or environmental limitations established. With regard to plaintiff's symptoms, Dr. Schneider indicated "the symptoms of breast pain and back pain are attributable to medically determined impairments and side effects of treatment." Ahmed can perform light work. A subsequent residual function capacity assessment was completed on behalf of the Agency. Similar results were reported. (R. 254).

## II.

ALJ Edgell found that the claimant has not engaged in substantial gainful activity since the alleged onset date of disability. Her medically determinable impairments (degenerative disc disease of the lumbar spine; mild herniated discs at L1-L2, L2-L3 and internal derangement of both knees) are severe. Plaintiff also has a history of invasive tubular carcinoma of the left breast with lobular carcinoma in situ, status post left partial mastectomy in 2002. This impairment is "not severe" since there is no clinical evidence of recurrence or limitations after the alleged onset date. (20 CFR 404.1521). According to the ALJ, these medially determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. The ALJ found plaintiff's subjective complaints are not supported by the objective clinical evidence of record. Accordingly, plaintiff was found to be exaggerating her complaints. The claimant has the residual functional capacity to perform light work which was consistent with two separate function assessments. The ALJ concluded that Ahmed could perform her past relevant work as retail manager/assistant manager and deli clerk. (20 CFR 404.1565).

## III.

A claimant is considered disabled under the Social Security Act if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which … has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). A plaintiff will not be considered disabled unless she cannot perform her previous work and is unable, in light of her age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. *Id*. at §423(d)(2)(A). *See Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 263 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); *see* 42 U.S.C. §405(b).

The Agency has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. §404.1520. First, the plaintiff must establish that she is not currently engaging in substantial gainful activity. If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. *See Plummer*, 186 F.3d at 428 (citing *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)). In step two, if the plaintiff is not working, she must establish that she suffers from a severe impairment. 20 C.F.R. §404.1520(c). If plaintiff fails to demonstrate a severe impairment, the Administrative Law Judge (ALJ) must deny disability benefits. *Id*.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine whether the impairment matches or is equivalent to a listed impairment found in "Listing of Impairments" 20 C.F.R. §404, Subpart P, Appendix 1. *Id.; Burnett*, 220 F.3d at 118-20. If it does, the plaintiff is automatically disabled. 20 C.F.R. §404.1520(e).

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to step four. *Plummer*, 220 F.2d at 428. In step four, the ALJ must consider whether the plaintiff "retains the residual functional capacity to perform [his or] her past relevant work." *Id.*; *see Sykes*, 228 F.3d at 263; 20 C.F.R. §404.1520(d). This step requires the ALJ to do three things: 1) assert specific findings of fact with regard to the plaintiff's residual functional capacity ("RFC"); 2) make findings with regard to the physical and mental demands of the plaintiff's past relevant work; and 3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work. *Burnett*, 220 F.3d at 120. The plaintiff bears the burden of proof for steps one, two and four of this five-step test[2]. *Sykes*, 228 F.3d at 263.

IV.

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *see* 42 U.S.C. §405(g). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. §405(g). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla. *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422.

The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64,

---

[2]   Step five of the test is not discussed because it is not at issue herein.

70 (3d Cir. 1984). As one court has stated:

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - - particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales,* 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 317 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

V.

The Plaintiff's brief states that there are two primary issues; but for purposes of review, they are subdivided into three overlapping issues. The first issue is whether the ALJ improperly found that plaintiff was not a credible witness. That is, the Agency failed to give proper credence to the complaints of Ahmed concerning "pain, weakness . . . antalgic gait . . . side effect of medication . . . and mental impairments including fatigue, anxiety . . . and insomnia." According to plaintiff, this means the ALJ should have given plaintiff's subjective complaints greater weight; and the ALJ's credibility determinations were based on nothing more than "mere speculation". From a review of the record, the Court disagrees. At the hearing, plaintiff testified that her pain was intense; but the record as a whole does not support this. It reveals that there is more than substantial evidence to sustain the ALJ's findings. For example:

9

    (a)    St. Joseph's Hospital records indicate in July 2004 that plaintiff's back pain had improved 85% with physical therapy (R. 161);

    (b)    An MRI from January, 2004 noted that plaintiff's disc herniations were "small" and her bulging discs "mild" (R. 185, 286);

    (c)    Plaintiff told Dr. Materese in September, 2005 that she "had pain some days" and she was "was feeling a little pain" in her knees. At that time, her gait was normal.

    (d)    Dr. Lathan found that there was only moderate restrictions and plaintiff was in "no acute distress." (R. 250);

    (e)    Dr. Tsai found only "slight" tenderness and "mild" muscle spasms in plaintiff's back (R. 230-32);

    (f)    the Residual Functional Capacity Assessment found that plaintiff had pain, but she could work (R. 241-48).

All of the above sustain the ALJ's findings that plaintiff's allegations of disabling pain are not completely credible because the objective findings were not in accord with her testimony. Moreover, the ALJ has the discretion to evaluate the credibility of the plaintiff's complaints. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006). The Court generally defers to an ALJ's credibility determination because the ALJ is present at the hearing and can assess a claimant's demeanor. See *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Generally, an applicant's testimony may not be discredited on the basis of the ALJ's own judgment; it must be discredited by contradictory medical evidence. *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983). As discussed above, the record shows such contradictory evidence. The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. S 405(g).

The plaintiff's next argument is that the ALJ erred by finding that plaintiff's breast cancer was "not severe" as defined by the regulations. Plaintiff was diagnosed and treated for tubular carcinoma of the left breast which required partial mastectomy. (R. 141). Several biopsies had been performed subsequently. As of September, 2005, the cancer was in remission. Dr. Shah, in September, 2005 found plaintiff was in "no acute distress" and there was no evidence of a mass or discharge of plaintiff's left breast. Dr. Noy, an associate of Dr. Shah, found that plaintiff was feeling well and the cancer was in remission. (R. 296). These reports constitute substantial evidence that the cancer did not meet or equal a listing in 20 C.F.R. §404, Subpart P, Appendix 1.

Plaintiff's final argument is that taking plaintiff's various conditions together (back and knee conditions, residuals of breast cancer and side effects of medications) she is disabled. Although there were no precise findings about the combined effect of plaintiff's conditions, the ALJ's decision and the record demonstrate that such an analysis was undertaken. See, *Berry v. Schweiker*, 675 F. 2d 464, 469 (2d Cir. 1982). For example, with regard to her back and knee conditions, the residual functional capacity assessment test considered these conditions as a whole. In addition, Dr. Lathan's report indicates that he reviewed all of plaintiff's biomechanics including back, knee, hands and her breast cancer. Hence, the back and knees and residuals from breast cancer were considered together by the physicians as well as the ALJ. According to the record, plaintiff's cancer is in remission, and there is no evidence that the residuals of breast cancer are disabling to the extent plaintiff can not work. With regard to the effects of plaintiff's medications, there is no evidence that taking medication renders her disabled. From the Court's review, there is a lack of evidence which suggests that use of pain medication was an issue at trial. See, *Monguer v. Heckler*, 722 F. 2d 1033, 1040 (2d Cir. 1983).

The thrust of the record is not, as plaintiff claims, that the combined maladies render plaintiff disabled.  To the contrary, Plaintiff's failure to undertake routine treatment (epidural shots for her back) and procedures (arthrosporic surgery for her knees) may be significant factors for her lingering condition.   As a general rule, plaintiff must follow the treatment prescribed by a physician if this treatment can restore one's ability to work.  20 C.F.R. 40 §404.1530.  Plaintiff is not entitled to benefits if the prescribed treatment is not followed without a good reason.  Accordingly, there is substantial evidence to support the ALJ's decision.

The decision is affirmed. The complaint is dismissed.

 s/Peter G. Sheridan
PETER G. SHERIDAN, U.S.D.J.

January 8, 2008